# GEORGE E. MICHAEL

v.

# CITY OF ROCHESTER

October 12, 1979

*O'Neill, Backus & Spielman*, of Manchester (*William L. Shaine* orally), for the plaintiff.

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*Lance S. Adler* orally), for the defendant.

DOUGLAS, J. This case concerns the validity of an agreement by which the city of Rochester obligated itself to reimburse George Michael money he expended to extend a city water main to his property. Trial in Superior Court (*Dunfey*, C.J.) resulted in a verdict for plaintiff requiring the city to pay all monies due and owing, and monies received in the future under the terms of the agreement. The city excepted to the denial of its requests for certain rulings, to the verdict and to the denial of its motions to set aside the verdict and for a new trial. We affirm the trial court.

In 1959, the Rochester City Council approved Mr. Michael's request that a city water main be extended to his property. The parties agreed that Michael would pay the installation cost and that the city would prorate the cost among future lot purchasers who would tie into the extension. The plaintiff paid the installation cost in full.

For the next eight years the city required landowners seeking to tie into the water main extension to first obtain a release from Michael. He sold these releases at four dollars per running foot of frontage on Route 16. Thus he began to recoup his installation expenditure. Michael sold his property in 1968, and since then the city has ceased requiring lot owners to pay Michael pro rata shares. He brought this action for breach of the agreement.

The city first argues that the agreement is ultra vires, void, and illegal because when the agreement was made Michael was a city

council member and voted for the agreement. The city cites RSA 49-A:82, which prohibits a city council member from participating in a decision in which he has a financial interest. Because this statute was adopted four years subsequent to the agreement, the statute must apply retroactively, if it applies at all.

■■ This court has held that a remedial or procedural statute may be applied retroactively to a case that was pending when the statute became law. *Liberty Mutual Ins. Co. v. Home Ins. Indemn. Co.,* 117 N.H. 269, 371 A.2d 1171 (1977). This case was not pending in 1963, the effective date of RSA 49-A:82. Further, the statute is neither remedial nor procedural. Its application here would affect substantive contractual rights that, once vested, will not be disturbed. *Pepin v. Beaulieu,* 102 N.H. 84, 151 A.2d 230 (1959); *Woart v. Winnick,* 3 N.H. 473 (1826).

■ The city also asserts that Michael's conflict of interest, which the trial court found to have influenced his vote on the agreement, invalidated that agreement. Though a judicial or quasi-judicial act of a municipal body may be voided because of a conflict of interest, *Rollins v. Connor,* 74 N.H. 456, 69 A. 777 (1908), an administrative or legislative act by such a body need not be invalidated if the conflicting interest did not determine the outcome. *Marshall v. Elwood City Borough,* 189 Pa. 348 (1899); *see Atherton v. Concord,* 109 N.H. 164, 166, 245 A.2d 387, 389 (1968).

■ When the Rochester City Council agreed to serve as a conduit for the flow of private funds, it merely implemented a city ordinance. No judicial function was involved, as in the case when an agency decides a dispute between two or more parties with competing interests. 53 N.C.L. REV. 833, 838 (1975). In this case the interests of the plaintiff and the city coincided and the two struck a bargain. The plaintiff received a water main extension and a promise of reimbursement; the city stood to increase its tax base if the area along the route of the extension developed.

Further, the vote in which Michael participated was unanimous among the other eight members of the council. Under such circumstances the trial court could find that the plaintiff's interest did not determine the outcome of the vote, and that the council's action was valid.

■ The city next argues that the agreement is void because the city did not comply with procedural requirements necessary to a lawful decision on the plaintiff's petition. This contention is without merit. Whether or not a contract is binding against a city initially, the city

may later ratify and adopt the agreement and thereby make it valid from the beginning. *Green v. Shaw*, 116 N.H. 562, 364 A.2d 1265 (1976); *Lucier v. Manchester*, 80 N.H. 361, 117 A. 286 (1922). In this case the city allowed Michael to pay for the extension and performed its own obligations under the contract for eight years. Thus the city ratified and adopted the agreement.

The city further contends that when Michael sold his land he terminated his right to recoup the costs of the extension. In support the city cites *Granite State Land Co. v. Hampton*, 76 N.H. 1, 79 A. 25 (1911), for the proposition that land ownership must be the basis for a special assessment. From this the city concludes that rights and duties arising from a special assessment are inseparable from ownership of the land assessed. This conclusion cannot flow from a case in which we held that lessees should share the burden of a special assessment with their lessor/landowners. *Id.* at 7; 79 A. at 29.

Finally the city argues that its custom was to terminate pro rata repayments like those at issue in this case whenever the benefiting landowner sold his property, and that Michael should be bound by his knowledge of the custom. However, the trial court found that Michael had no such knowledge. Unless he had knowledge, he is not bound. *Goodall v. New England Mutual Fire Ins.*, 25 N.H. 169 (1852).

Given the uncertainty of eventual repayment and the long duration of the repayment period, the possibility of recovery of more than the actual cost, which Michael paid in full, does not confer an unfair benefit on him. Landowners seeking to tie into the water main extension may still obtain releases from Michael at 1959 rates, though evidence at trial showed that installation costs have nearly doubled. Under the agreement, the plaintiff recovers his long-term investment, new landowners tie in at bargain rates, and the city merely acts as a go-between. We see nothing inequitable in this.

*Decree affirmed.*

GRIMES, J., did not sit; the others concurred.